IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Anthony James, #310987, a/k/a Anthony Glenn James, Jr., ) ) ) Plaintiff, ) ) vs. ) ) Lt. Wonda Scarborough and Anthony J. Padula, Warden of Lee Correctional Institution, ) ) ) ) ) Defendants. ) ) | C/A No.: 1:10-2794-HMH-SVH<br><br><br><br>REPORT AND RECOMMENDATION |

Plaintiff, proceeding *pro se*, brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while incarcerated at Lee Correctional Institution ("LCI"). Before the court are defendant Scarborough's Motion for Summary Judgment [Entry #71] and Plaintiff's Motion for Summary Judgment [Entry #96]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions are dispositive, this Report and Recommendation is entered for the district judge's consideration.

I.      Factual and Procedural History

Plaintiff alleges that defendant Scarborough slammed his face into a steel door on October 2, 2009, while escorting him to the shower to remove chemical spray. Compl. at 3 [Entry #1]. According to the complaint, Plaintiff's hands were cuffed behind his back at the time. *Id.* Plaintiff alleges that Scarborough was terminated, but that he has been

harassed by her former co-workers. *Id.* Additionally, Plaintiff claims he has been on prescription medicine as a result of the alleged excessive force. *Id.*

According to her affidavit, Scarborough contends that Plaintiff became irate and uncooperative as she escorted him to the showers. Scarborough Aff., ¶ 4 [Entry #71-3]. She avers that Plaintiff "stepped back and pushed his weight against [her] and attempted to head butt [her] . . . ." *Id.* According to Scarborough, she pushed him slightly forward and directed him in a firm voice to walk forward. *Id.* at ¶ 5.

Scarborough filed a motion for summary judgment on July 25, 2011. [Entry #71]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the dismissal procedures and the possible consequences if he failed to respond adequately to Scarborough's motion. [Entry #72]. Plaintiff filed a response on August 5, 2011 [Entry #75]. Additionally, Plaintiff filed a motion for summary judgment on October 24, 2011 [Entry #96] and Scarborough filed a response on November 4, 2011 [Entry #100]. Having carefully considered the parties' submissions and the record in this case, the court recommends denying both Scarborough's motion and Plaintiff's motion for summary judgment.

II.   Discussion

    A.   Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of

demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.  Analysis

1.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that federal prisoners exhaust their administrative remedies prior to filing civil actions. *See Jones v. Bock*, 549 U.S. 199, 211, (2007); *Booth v. Churner*, 532 U.S. 731 (2001). Exhaustion is required for "[a]ll action[s]. . . brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*, 534 U.S. at 532. Exhaustion is a threshold requirement that must be satisfied in order for prisoner complaints to proceed. *See Jones*, 549 U.S. at 216; *Booth*, 532 U.S. at 741. Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216.  No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211. The PLRA requires "proper" exhaustion, that is, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Pursuant to SCDC policy, an inmate with a complaint must first attempt to informally resolve his complaint.  Next, an inmate may file a "Step 1 Grievance" with designated

4

prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance."

Scarborough argues that Plaintiff has not exhausted his administrative remedies, as he has failed to appeal the return of his Step 1 and Step 2 grievances as unprocessed. First, the court notes that the PLRA requires the exhaustion of remedies within the agency only and does not require resort to the appellate state courts. *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). To exhaust their administrative remedies, inmates are not required to go beyond Step 2. *See Brown v. Evans Correctional Institution Medical Staff*, C/A No. 2:06-2464-DCN-RSC, 2007 WL 1290359, at*4 (D.S.C. April 30, 2007) ("In sum, the fact that the South Carolina legislature made a court available to prisoners who wanted to appeal a final decision by the SCDC denying a SCDC grievance does not alter the federal PLRA by extending its administrative exhaustion requirement to include exhaustion in all state judicial forums."). Therefore, Scarborough has not met her burden in proving that Plaintiff has failed to exhaust his administrative remedies. *See Anderson v. XYZ Correctional Health Services*, 407 F.3d 674, 683 (4th Cir. 2005) ("An inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant.").

    2.    Excessive Force

It is well-established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 5 (1992). In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove

that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, --- U.S. ----, 130 S.Ct. 1175 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "[w]hen prison officials maliciously and sadistically use force to cause harm' ... 'contemporary standards of decency are always violated ... whether or not significant injury is evidence. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 130 S.Ct. at 1179 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

However, courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321–22. The Supreme Court has recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. *Id.* The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of ... breaches of prison discipline." *Id.* at 322.

The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need

6

for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

In the instant case, there exist disputes of fact regarding each of the *Whitley* factors. Although Scarborough avers that Plaintiff was uncooperative and attempted to head butt her, Plaintiff has submitted the SCDC's internal investigative memorandum, which indicates conflicting testimony from corrections officers who witnessed the incident. [Entry #96-2]. Additionally, Plaintiff alleges Scarborough intentionally smashed his face into a metal door, while Scarborough claims she simply pushed him slightly forward and directed him to walk forward. Because there exist disputes of fact in this matter, it is recommended that both Scarborough's motion and Plaintiff's motion for summary judgment be denied.

### 3. Immunity

Scarborough also argues this case should be dismissed based on the state's immunity from suit in federal court pursuant to the Eleventh Amendment. The Eleventh Amendment provides, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Under the Eleventh Amendment, . . . neither a State nor its officials in their official capacity may be sued for damages in federal court without their consent." *Gamache v. Cavanaugh*, 82 F.3d 410 at *1 (4th Cir. 1996). Eleventh Amendment protection from

damages suits also applies to state employees acting in their official capacity as "arms of the State." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U. S. 139, 144 (1993) (Stevens, J., dissenting). Therefore, to the extent Scarborough is sued for monetary damages in her official capacity, Plaintiff's claims are barred. However, Plaintiff's claims against Scarborough in her individual capacity remain, as do his claims for injunctive relief against Scarborough in her official capacity.

Scarborough also asserts that, to the extent Plaintiff's constitutional rights were violated, she is entitled to qualified immunity. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by this immunity. The *Harlow* court held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct,

to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello,* 973 F.2d at 298.

A question of fact exists as to whether Scarborough used excessive force on Plaintiff. The right of inmates to be free from cruel and unusual punishment, such as the use of excessive force, is clearly established in the law. Therefore, viewing the facts in the light most favorable to Plaintiff under Fed. R. Civ. P. 56, Scarborough is not entitled to summary judgment on the basis of qualified immunity.

III.    Conclusion

For the foregoing reasons, it is recommended that Scarborough's Motion for Summary Judgment [Entry #71] be denied, except to the extent Scarborough is sued for

monetary damages in her official capacity. It is also recommended that Plaintiff's Motion for Summary Judgment [Entry #96] be denied.

    IT IS SO RECOMMENDED.

*[signature]*

November 10, 2011             Shiva V. Hodges
Florence, South Carolina      United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**